**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT MIDDLE DISTRICT OF PENNSYLVANIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Daniel Scott Melhorn | Case Number:<br>1:14-bk-02506-MDF | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
PNC Bank, National Association

**COURT USE ONLY**

| Name and address where notices should be sent:<br>PNC Bank, N.A.<br>3232 Newmark Drive<br>Miamisburg, OH 45352<br><br>Telephone number:                email: | X Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number: 2-1**<br>(*If known*)<br><br>Filed on: _09/19/2014_____ |

| Name and address where payment should be sent (if different from above):<br>PNC Bank, N.A.<br>3232 Newmark Drive<br>Miamisburg, OH 45352<br><br>Telephone number:                email: | ❑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**     $ 254,267.38

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

X Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:  Mortgage and Note**
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br><br>4943 | 3a. Debtor may have scheduled account as:<br><br>N/A<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br><br><br>(See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff:   X Real Estate   ❑Motor Vehicle   ❑Other
Describe:        4175 Abbey Lane
                York, PA 17402

**Value of Property:** $_Unknown_(with reservation of right to obtain appraisal based upon interior inspection)

**Annual Interest Rate 2.000%**   X Fixed   or   ❑ Variable

**(when case was filed)**

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

                $35,274.46

Basis for perfection: Recorded Mortgage

Amount of Secured Claim:  $254,267.38

Amount Unsecured:        $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| | | |
|---|---|---|
| ❑ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ❑ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ❑ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). |
| ❑ Up to $2,775* of deposits toward urchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ❑ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ❑ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). |

**Amount entitled to priority:**

$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

❑ I am the creditor.   X I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ❑ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ❑ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Nicole LaBletta
Title: Attorney
Company: Udren Law Offices
Address and telephone number (if different from notice address above):
111 Woodcrest Drive
Suite 200
Cherry Hill, NJ 08003

/s/   Nicole LaBletta _____   10/19/2015 _____
       (Signature)                         (Date)

Telephone number:   856-669-5400          email: nlabletta@udren.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

**INSTRUCTIONS FOR PROOF OF CLAIM FORM**
*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*
**Items to be completed in Proof of Claim form**

B 10 (Official Form 10) (04/13)

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____ | _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system
(www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | | |
|---|---|---|---|
| **Name of debtor:** | Daniel Scott Melhorn | **Case number:** | **1:14-bk-02506-MDF** |
| **Name of creditor:** | **PNC Bank, National Association** | Last four digits of any number you use to identify the debtor's account: | **4943** |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

**Itemize the principal and interest due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**    (1)   **$230,453.98**

2. **Interest due**

| Interest rate | From<br>mm/dd/yyyy | To<br>mm/dd/yyyy | Amount |
|---|---|---|---|
| **2.000** % | **12/01/2012** | **05/28/2014** | **$6,888.01** |
| _____ % | __/__/____ | __/__/____ | + $ _____ |
| **Total interest due as of the petition date** | | **$6,888.01** | Copy total here ▶ (2)   **$6,888.01** |

3. **Total principal and interest due**    (3)   **$237,341.99**

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

**Itemize the fees, expenses, and charges due on the claim as of the petition date** (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. Late charges | 02/16/2012 through 7/16/2012 | (1) | $235.44 |
| 2. Non-sufficient funds (NSF) fees | | (2) | $0.00 |
| 3. Attorney's fees | 10/21/2013, 04/18/2013 | (3) | $2,050.00 |
| 4. Filing fees and court costs | | (4) | $0.00 |
| 5. Advertisement costs | | (5) | $0.00 |
| 6. Sheriff/auctioneer fees | 01/14/2013 ,04/18/2013, 05/09/2014 | (6) | $5,204.54 |
| 7. Title costs | 04/18/2013 | (7) | $225.00 |
| 8. Recording fees | | (8) | $0.00 |
| 9. Appraisal/broker's price option fees | | (9) | $0.00 |
| 10. Property inspection fees | | (10) | $0.00 |
| 11. Tax advances (non-escrow) | | (11) | $0.00 |
| 12. Insurance advances (non-escrow) | | | $0.00 |
| 13. Escrow shortage or deficiency Do not include accounts that are part of any installment payment listed in Part 3.) | | (13) | $3,983.47 |
| 14. Property preservation expenses. Specify | | (14) | $0.00 |
| 15. Other. Posting costs | 04/18/2013 through 05/09/2014 | (15) | $340.75 |
| 16. Other. Certified mail | 04/18/2013 | (16) | $50.00 |
| 17. Other. Specify | | (17) | $0.00 |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $12,089.20 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

---

1. **Installment payments due**

Date last payment received by creditor    01/02/2014

Number of installment payments due    (1)    17

2. **Amount of installment payments due**

| | | |
|---|---|---|
| 4 Installments @ | + | $1,390.11 |
| 8 Installments @ | + | $1,333.59 |
| 5 Installments @ | + | $1,391.22 |
| 0 Installments @ | + | $0.00 |

Total installments due as of the petition date    $23,185.26    Copy total here ▶ (2)    $23,185.26

3. **Calculation of cure amount**

**Add** total prepetition fees, expenses, and charges    Copy total from Part 2 here ▶ +    $12,089.20

**Subtract** total of unapplied funds (funds received but not credited to account    -    $0.00

**Subtract** amounts for which debtor is entitled to a refund    -    $0.00

Total amount necessary to cure default as of the petition date    $35,274.46

Copy total onto item 4 of Proof of Claim form

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: **Daniel Scott Melhorn;**

CASE NO. **1:14-bk-02506-MDF**

Chapter: **13**

Debtor(s)

**Itemization of interest and/or charges included in Proof of Secured Claim of PNC Bank, National Association , Item (1) Amount of Claim as of Date Case Filed:**

## AMOUNT OF CLAIM AS OF DATE CASE FILED:

| | |
|---|---:|
| Principal of debt due and unpaid | $230,453.98 |
| Interest from **12/01/2012** to **05/28/2014** @**2.000**% (as set forth in B10A (Attachment A), Item (2) | $6,888.01 |
| Escrow Advance | $8,819.66 |
| Total prepetition fees, expenses, and charges | $8,105.73 |
| **TOTAL** | **$254,267.38** |

The calculations contained herein are as of the date of the filing of the Chapter 13 Petition (05/29/2014).

Dated: 10/19/2015

**/s/ Nicole LaBletta**
**Nicole LaBletta**, Esquire
**nlabletta@udren.com**
Udren Law Offices, P.C.
Woodcrest Corporate Center
111 Woodcrest Road, Suite 200
Cherry Hill, NJ 08003
**(856)669-5400**



**PNC MORTGAGE™**

P.O. Box 1820
Dayton, Ohio 45401-1820
Website: www.pncmortgage.com
Customer Service ▮▮▮▮▮▮

**ESCROW ACCOUNT DISCLOSURE STATEMENT**

LOAN NUMBER: ▮▮▮▮▮▮
DATE: June 19, 2014

DANIEL S MELHORN
4175 ABBEY LN
YORK PA 17402-3302

| CURRENT MONTHLY MORTGAGE PAYMENT | |
|---|---|
| Principal & Interest | 784.77 |
| Escrow | 560.57 |
| Prorated Escrow Shortage | 44.77 |
| Total Payment | 1,390.11 |

| NEW PAYMENT INFORMATION | |
|---|---|
| Principal & Interest | 784.77 |
| Escrow | 562.89 |
| Total Payment | 1,347.66 |
| New Payment Effective Date | 08/01/14 |

## COMING YEAR ESCROW PROJECTION

This statement provides a detailed summary of activity related to your escrow account. PNC Mortgage maintains your escrow account to pay such items as property taxes, insurance premiums, and mortgage insurance.

This section lists a 12-month running escrow balance to determine the appropriate target balance and to determine if a shortage or surplus exists. This is a projection of the anticipated activity in your escrow account for the coming 12 months.

| ANTICIPATED ESCROW DISBURSEMENT | | MONTH | PAYMENTS TO ESCROW | DESCRIPTION | PAYMENTS FROM ESCROW | CUR BAL PROJECTION | REQ BAL PROJECTION |
|---|---|---|---|---|---|---|---|
| TAXES | $3,808.87 | | | BEGINNING BALANCE | | 1,024.51 | 5,007.98 |
| HAZARD INS | $1,762.00 | June | 562.89 | | | 1,587.40 | 5,570.87 |
| CITY TAX | $1,183.84 | July | 562.89 | | | 2,150.29 | 6,133.76 |
| | | August | 562.89 | SCHOOL TAX | 3,808.87 | -1,095.69 | 2,887.78 |
| | | August | 562.89 | HAZARD INS | 1,762.00 | -2,857.69 * | 1,125.78 ** |
| | | September | 562.89 | | | -2,294.80 | 1,688.67 |
| TOTAL DISBURSEMENTS | $6,754.71 | October | 562.89 | | | -1,731.91 | 2,251.56 |
| | | November | 562.89 | | | -1,169.02 | 2,814.45 |
| DIVIDED BY 12 MONTHS | | December | 562.89 | | | -606.13 | 3,377.34 |
| | | January | 562.89 | | | -43.24 | 3,940.23 |
| MONTHLY ESCROW DEPOSIT | $562.89 | February | 562.89 | | | 519.65 | 4,503.12 |
| | | March | 562.89 | CITY TAX | 1,183.84 | -101.30 | 3,880.17 |
| CALCULATION OF ESCROW ADJUSTMENT | | April | 562.89 | | | 461.59 | 4,445.06 |
| | | May | 562.89 | | | 1,024.48 | 5,007.95 |

BEGINNING PROJECTED BALANCE $1,024.51
BEGINNING REQUIRED BALANCE $5,007.98

ESCROW SHORTAGE $3,983.47

The required minimum balance allowed by federal law (RESPA) is two times your monthly escrow payment (excluding MIP/PMI), unless your mortgage document or state law specifies a lower amount.

\* The projected escrow balance at the low point.
\*\* The lowest balance the escrow account should attain during the projected period.

MORE INFORMATION ON REVERSE SIDE

## IMPORTANT MESSAGES

Make your check, money order or cashier's check payable to PNC Mortgage. All Payments must be funds from a U.S. Bank Account and are subject to PNC's acceptance. Do NOT send cash by mail.

We understand that you have filed for bankruptcy and have not yet received a discharge. None of the information requested in this statement will be used for the collection of any debts or for purposes prohibited by the Bankruptcy Code or other applicable Federal or state law.

748-2022-0612F

---

INTERNET REPRINT

## ESCROW SHORTAGE COUPON

**PNC MORTGAGE™**

Customer Name: DANIEL S MELHORN

Account Number: ▮▮▮▮▮▮    Shortage Amount: $3,983.47

PNC MORTGAGE
PO BOX 6534
CAROL STREAM IL 60197-6534

If you wish to pay the shortage amount in full, please mail a check for the shortage amount, along with this coupon, in the envelope provided. When paying your escrow shortage, please do not make your payment via electronic on-line banking, as it will not be applied directly to escrow. Payment should be remitted no later than 15 business days after receipt of this notification. Your new monthly mortgage payment will be reduced to $1,347.66 once you pay the shortage amount. **In order to avoid a delay in the processing of your payment, please DO NOT include your mortgage payment with the shortage payment.**

This is a copy of your escrow shortage coupon. If you cannot find your original statement, please contact Customer Service at ▮▮▮▮▮▮ to request a new statement or click the link above to pay your escrow shortage online. Please DO NOT print and mail a copy of this page.



# ESCROW ACCOUNT DISCLOSURE STATEMENT

Your projected escrow balance as of 05/31/14 is $1,024.51. Your required beginning escrow balance, according to this analysis, should be $6,007.98. This means you have a shortage of $3,983.47. We have divided the shortage interest-free, over 0 months. If you choose to pay the shortage in full, then your new monthly mortgage payment will be reduced to $1,347.66.

Once during this analysis period, your required escrow balance should be reduced to a target balance of $1,125.78, as it does in August. Under Federal law, your target balance should not exceed an amount equal to two months of escrow payments for taxes and insurance, unless your mortgage document or state law specifies a lower amount.

## Projected Activity from the Previous Analysis

This is a projection of the activity for your escrow account from the Previous Analysis. This projection was based on the disbursements anticipated to be made from your escrow account. Compare this projection to the actual escrow activity in the Account History (summarized below).

The escrow payment in this projection may not equal the escrow payment in the Account History if an adjustment was made to collect a shortage or refund a surplus.

Adjustments to the payment and differences between the anticipated and actual disbursements may prevent the actual balance from reaching the projected low escrow balance.

| Date | Description | Payments | Disbursements | Balance |
|---|---|---|---|---|
| | BEGINNING BALANCE | | | 3,363.41 |
| 01/14 | | 560.57 | | 3,923.98 |
| 02/14 | | 560.57 | | 4,484.55 |
| 03/14 | CITY TAX | 560.57 | 1,155.96 | 3,889.16 |
| 04/14 | | 560.57 | | 4,449.73 |
| 05/14 | | 560.57 | | 5,010.30 |
| 06/14 | | 560.57 | | 5,570.87 |
| 07/14 | | 560.57 | | 6,131.44 |
| 08/14 | SCHOOL TAX | 560.57 | 3,808.87 | 2,883.14 |
| 08/14 | HAZARD INS | | 1,762.00 | 1,121.14 ** |
| 09/14 | | 560.57 | | 1,681.71 |
| 10/14 | | 560.57 | | 2,242.28 |
| 11/14 | | 560.57 | | 2,802.85 |
| 12/14 | | 560.57 | | 3,363.42 |
| TOTAL | | 6,726.84 | 6,726.83 | |

## Account History

This is a statement of actual escrow account activity from January 2014 through May 2014. Compare it to the Projected Activity from the Previous Analysis which appears above the Account History.

Your total mortgage payment during the past year was $1,390.11 of which $784.77 was your Principal and Interest payment and $560.57 was your escrow payment.

| Date | Description | Payments | Disbursements | Balance |
|---|---|---|---|---|
| | BEGINNING BALANCE | | | -8,357.92 |
| 01/14 | | 548.82 | | -7,809.10 |
| 03/14 | CITY TAX | 173.28 | 1,183.84 * | -8,819.66 |
| 06/14 | | 9,844.17 e | | 1,024.51 |
| TOTAL | | 10,566.27 | 1,183.84 | |

* Indicates a difference from projected activity either in the amount or the date.

** Required minimum escrow balance.

"e" Indicates estimates for future payments or disbursements.

If you have any questions about this analysis statement, please visit us at www.pncmortgage.com to send us an email, write to us at PNC Mortgage; Attention: Customer Service Research; B6-YM07-01-7, PO Box 1820; Dayton, OH 45401 or call our Customer Service Department toll free number ▮▮▮▮▮▮▮▮▮



MELHORN

DOT/MTG - RECORDED



Melhorn.



YORK COUNTY
ASSESSMENT OFFICE

Prepared By:

ARLENE HETZER
P.O. Box 8727
Dayton OH 45401-8727

Return To:
National City Bank of Indiana

P.O. Box 8800
Dayton, OH 45401-8800

Parcel Number: ▓▓▓▓▓▓▓

Premises: 4175 ABBEY LANE,
YORK, Pennsylvania 17402

———————————————— [Space Above This Line For Recording Data]

# MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated August 22, 2005 together with all Riders to this document.
**(B) "Borrower"** is

DANIEL S MELHORN A ~~Single~~ Man *Married*
*R.*

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is National City Mortgage a division of
National City Bank of Indiana
Lender is a National Banking Association *E.*

**PENNSYLVANIA** Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT** Form 3039 1/01

**VMP®-6(PA)**

Page 1 of 16    Initials: *DSM*

VMP Mortgage Solutions, Inc. ▓▓▓▓

Book 1752 Page 30

**ALL THAT CERTAIN**, tract of land situate in SPRINGETTSBURY TOWNSHIP, York County, Pennsylvania, and being known as Lot No. 81 on a final plan of a portion of Section 5, Stonewood Farms, dated July 5, 1973, and prepared by C. S. Davidson, Inc., Consulting Engineers, York, Pennsylvania. Said plan being recorded in the Office of the Recorder of Deeds of York County, in Plan Book X, Page 137, as follows, to wit:

**BEGINNING** at a point on the Northern side Abbey Lane at Lot #80 (on above mentioned plan); thence along the dividing line between Lot #80 and Lot #81, North 00 degrees 43 minutes 45 seconds West 105.00 feet to a point at Lot No. 81 (of above mentioned plan); thence along the dividing line between Lot No. 84 and Lot No. 81, North 89 degrees 16 minutes 15 seconds East 95.00 feet to a point at Lot No. 82; (on above mentioned plan); thence along the dividing line between Lot No. 82 and Lot No. 81, South 00 degrees 43 minutes 45 seconds East 105.00 feet to a point on the Northern side of Abbey Lane, thence along the Northern side of said Abbey Lane, South 89 degrees 16 minutes 15 seconds West 95.00 feet to the point and place of **BEGINNING**.

**IT BEING** the same premises which Richard Imbimbo and Maureen M. Imbimbo, husband and wife of York County, by deed dated the 2nd day of May, 1994 and recorded on the 24th day of May, 1994 in the Recorder of Deeds in and for York County, Pennsylvania in Record Book 0883, Page 0387, granted and conveyed unto Brian N. Hartman and Susan L. Hartman, Grantors herein.

**Property Parcel Number** ███████████████████████

organized and existing under the laws of **United States**
Lender's address is **3232 Newmark Drive, Miamisburg, OH 45342**

Lender is the mortgagee under this Security Instrument.

(D) **"Note"** means the promissory note signed by Borrower and dated **August 22, 2005**
The Note states that Borrower owes Lender

**TWO HUNDRED SIXTEEN THOUSAND & 00/100** Dollars
(U.S. $ **216,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **September 1, 2030** .

(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) **"Escrow Items"** means those items that are described in Section 3.

(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6(PA)

Page 2 of 18

Initials: _DSM_

**Form 3039 1/01**

(O) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the        **County**         [Type of Recording Jurisdiction]
of      **York**                                                      [Name of Recording Jurisdiction]:

which currently has the address of
     **4175 ABBEY LANE,**
     **YORK**                                                                          [Street]
                                              [City] , Pennsylvania      **17402**      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

-6(PA)                              Page 3 of 16           Initials: _DSM_           **Form 3039   1/01**

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

VMP-6(PA) (0811)

Page 4 of 16

Initials: DSM

**Form 3039 1/01**

Case 1:14-bk-02506-HWV Doc 8223 Filed 05/23/19 Entered 05/23/19 15:22:21 Desc
Main Document Page 16 of 39

Case 1:14-bk-02506-HWV Claim 2-2 Part 4 Filed 10/19/15 Desc Exhibit Loan Documents Page 16 of 39

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the

Case 1:14-bk-02506-HWV  Claim 2-2 Part 4  Filed 10/19/15  Desc Exhibit Loan
Main Document  Page 16 of 39

Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Case 1:14-bk-02506-HWV   Doc 6923   Filed 10/19/15   Desc Exhibit Loan Documents   Page 9 of 39

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

Case 1:14-bk-02506-HWV   Claim 2-2 Part 4   Filed 10/19/15   Desc Exhibit Loan
Documents   Page 18 of 39
Case 1:14-bk-02506-HWV   Doc 6023   Filed 05/28/19   Entered 05/28/19 15:28:21   Desc
Main Document   Page 18 of 39

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Case 1:14-bk-02506-HWV  Claim 2-2 Part 4  Filed 10/19/15  Desc Exhibit Loan Documents  Page 19 of 39
Case 1:14-bk-02506-HWV  Doc 6823  Filed 05/23/19  Entered 05/23/19 15:22:21  Desc Main Document  Page 18 of 39

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

Case 1:14-bk-02506-HWV   Claim 2-2 Part 4   Filed 10/19/15   Desc Exhibit Loan Documents   Page 21 of 39

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

Case 1:14-bk-02506-HWV Claim 2-2 Part 4 Filed 10/19/15 Desc Exhibit Loan Documents Page 22 of 39
Main Document Page 22 of 39

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all

Case 1:14-bk-02506-HWV    Claim 2-2 Part 4    Filed 10/19/15    Desc Exhibit Loan Documents    Page 23 of 39
Main Document   Page 23 of 39

expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

Case 1:14-bk-02506-HWV  Claim 2-2 Part 4  Filed 10/19/15  Desc Exhibit Loan Documents  Page 25 of 39
Case 1:14-bk-02506-HWV  Doc 63  Filed 05/23/19  Entered 05/23/19 15:28:21  Desc Main Document  Page 26 of 39

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
DANIEL S MELHORN                  -Borrower

_____

_____ (Seal)
                                  -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                               -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                               -Borrower

Case 1:14-bk-02506-HWV    Claim 2-3 Part 4    Filed 10/19/15    Desc Exhibit Loan
Documents    Page 18 of 37
Main Document    Page 26 of 39

**COMMONWEALTH OF PENNSYLVANIA,** York **County ss:**

On this, the 22nd day of August 2005 , before me, the undersigned officer, personally appeared Daniel S. Melhorn

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANGELA D. GARRISON, NOTARY PUBLIC
CITY OF YORK, YORK COUNTY
MY COMMISSION EXPIRES APRIL 28, 2008

_____
Title of Officer

**Certificate of Residence.**
I, Angela D. Garrison , do hereby certify that the correct address of the within-named Mortgagee is 3232 Newmark Dr.
Miamsburg, OH 45342
Witness my hand this 22nd day of August 2005 .

_____
Agent of Mortgagee

VMP -6(PA) (Page)
Page 16 of 16
Initials:
**Form 3039   1/01**

*YORK COUNTY RECORDER OF DEEDS*
*100 WEST MARKET STREET*
*YORK, PA 17401*

*Randi L. Reisinger - Recorder*
*Gloria A. Fleming - Deputy*



**Instrument Number -** ███████

Recorded On 9/1/2005 At 10:03:56 AM

\* **Instrument Type - MORTGAGE**

**Invoice Number -** ██████

\* **Grantor - MELHORN, DANIEL S**

\* **Grantee - NATIONAL CITY MORTGAGE**

**User - DMH**

\* **Customer - METROPOLITAN SETTLEMENT AGENCY/GINNY**

**Book - 1752  Starting Page - 30**
\* **Total Pages - 18**

\* **FEES**

| | |
|---|---|
| STATE WRIT TAX | $0.50 |
| JCS/ACCESS TO JUSTICE | $10.00 |
| RECORDING FEES | $39.00 |
| AFFORDABLE HOUSING | $11.50 |
| PIN NUMBER FEES | $2.00 |
| COUNTY ARCHIVES FEE | $2.00 |
| ROD ARCHIVES FEE | $3.00 |
| TOTAL | $68.00 |

**PARCEL IDENTIFICATION NUMBER**

████████████████

**Total Parcels: 1**

I Certify This Document To Be
Recorded In York County, Pa.

Recorder of Deeds

*THIS IS A CERTIFICATION PAGE*

## PLEASE DO NOT DETACH

*THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT*

\* - Information denoted by an asterisk may change during the verification process and may not be reflected on this page.

**Book: 1752  Page: 47**



# NOTE

August 22 , 2005                    YORK                    PENNSYLVANIA
[Date]                              [City]                  [State]


4175 ABBEY LANE, YORK, Pennsylvania 17402
                    [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    216,000.00   (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
**National City Mortgage a division of National City Bank of Indiana**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.125    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st**   day of each month beginning on   **October 1 , 2005**   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **September 1, 2030**   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at       **National City Mortgage Co.**
**P O Box 17677, Baltimore, MD 21297-1677**          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      1,408.25 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

●-5N(PA) (0207)        **Form 3200 1/01**
VMP MORTGAGE FORMS -
Page 1 of 3                    Initials: _____



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15      calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.00      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

-5N (07)

Page 2 of 3

**Form 3200 1**

Initials: ___

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DANIEL S MELHORN          -Borrower

PAY TO THE ORDER OF
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA
WITHOUT RECOURSE
NATIONAL CITY MORTGAGE, A DIVISION OF
NATIONAL CITY BANK OF INDIANA
_____ (Seal)
KRISTINE N BROWN          -Borrower
GROUP LEADER

PAY TO THE ORDER OF
_____ (Seal)
                          -Borrower
WITHOUT RECOURSE
NATIONAL CITY MORTGAGE CO
A SUBSIDIARY OF NATIONAL CITY BANK
OF INDIANA
_____ (Seal)
KRISTINE N BROWN          -Borrower
GROUP LEADER

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

*[Sign Original Only]*



Investor Loan # ▊▊▊▊

This document was prepared by
PNC MORTGAGE
3232 Newmark Dr.
Miamisburg, OH 45342

Return To:
PNC Mortgage
Special Loans Dept. (▊▊▊▊
3232 Newmark Dr.
Miamisburg, OH 45342

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Date Prepared: **08/23/11**
Borrower ("I"): **DANIEL S MELHORN**
Lender or Servicer ("Lender"): PNC Mortgage, a division of PNC Bank, NA
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **8/22/2005**
Loan Number ▊▊▊▊
Property Address: **4175 ABBEY LN, YORK, PA 17402**

Tax Parcel Number ▊▊▊▊▊▊

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

---

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3157    3/09  (rev. 8/09) (page 1 of 6 pages)

1.  **My Representations and Covenants**. I certify, represent to Lender, Covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of death, divorce or marriage;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a Trial Period Plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **09/01/11** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **09/01/11**.

    A.  The new Maturity Date will be: **10/01/46**.

    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$237,679.48** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

Case 1:14-bk-02506-HWV    Doc 23-2 Part 4  Filed 10/19/15    Desc Exhibit Loan Modification Documents  Page 33 of 39

C. Interest at the rate of **2.000%** will begin to accrue on the New Principal Balance as of **08/01/11** and the first new monthly payment on the New Principal Balance will be due on **09/01/11**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| [1-5] | 2.000 | 08/01/2011 | $784.77 | $605.33, may adjust periodically | $1,390.10, may adjust periodically | 9/1/2011 | 60 |
| [6] | 3.000 | 08/01/2016 | $895.70 | May adjust periodically | May adjust periodically | 9/1/2016 | 12 |
| [7] | 4.000 | 08/01/2017 | $1,011.46 | May adjust periodically | May adjust periodically | 9/1/2017 | 12 |
| [8] | 4.125 | 08/01/2018 | $1,026.06 | May adjust periodically | May adjust periodically | 9/1/2018 | 338 |
| [9-[40]] | | | $ | May adjust periodically | May adjust periodically | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G. If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3157    3/09 (rev. 8/09) (page 3 of 6 pages)

Case 1:14-bk-02506-HWV Claim 2-2 Part 4 Filed 10/19/15 Desc Exhibit Loan Documents Page 6 of 39

4. **Additional Agreements.** I agree to the following:

    A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

    B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

    C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

    E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

    F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

    G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

    H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

    I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

PNC Mortgage, a division of PNC Bank, NA
Lender

By: _____
Mortgage Officer  8/30/11

Date

Borrower- DANIEL S MELHORN          (Seal)
8-28-11
Date

_____ (Seal)
Borrower-

_____
Date

_____[Space Below This Line For Acknowledgement]_____



NCMC Loan Number: ████

## ASSIGNMENT OF MORTGAGE AND PROMISSORY NOTE

FOR VALUE RECEIVED, National City Mortgage Co. A Subsidiary of National City Bank of Indiana, 3232 Newmark Drive, Miamisburg, Oh. 45342 (NCMC), hereby sells, transfers, sets over, and assigns to:

FEDERAL NATIONAL MORTGAGE ASSOCIATES
MAIL DRAWER: ASSIGNMENTS
3900 WISCONSIN, NW
WASHINGTON, DC 20018

NCMC's entire right, title, and interest in and to the following described mortgage (the Mortgage) and promissory note (the Promissory Note) which are dated __August 22,2005.__ and are in the original principal amount of $ __216,000.00.__ The Mortgage is described and identified by the following name(s) of the mortgagor(s), the date of recording, instrument number, and/or book number as recorded in __York__ County, __PA__.

| MORTGAGOR(S) | INSTRUMENT NUMBER | BOOK & PAGE |
|---|---|---|

DANIEL S MELHORN

IN TESTIMONY WHEREOF, said NATIONAL CITY MORTGAGE CO A SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA has hereunto set its hands this date, __October 12, 2005.__

WITNESS:

NATIONAL CITY MORTGAGE CO. A SUBSIDIARY OF NATIONAL CITY BANK OF INDIANA

BY: _____

Name: SANDRA FRESHWATER
Title: LOAN REVIEW ADMINISTRATOR

STATE OF __OHIO__ ) SS:
COUNTY OF __MONTGOMERY__

On this date, __October 12, 2005__, before me, the undersigned, a Notary Public in and for said County and State, personally appeared __SANDRA FRESHWATER__ the __LOAN REVIEW ADMINISTRATOR__ for an on behalf of National City Mortgage Co. a Subsidiary of National City Bank of Indiana, and duly authorized to do so acknowledged the execution of the foregoing Assignment of Mortgage and Promissory Note as its voluntary act and deed for the uses and purposes therein contained.

_____
KATHLEEN A MAJESKI

Notary Public

My Commission Expires: 08/06/2006            My County of Residence: MONTGOMERY

This Instrument Prepared by:   NATIONAL CITY MORTGAGE CO. A SUBSIDIARY OF
                              NATIONAL CITY BANK OF INDIANA

Return To: National City Mortgage Co. a Subsidiary of
          National City Bank of Indiana



LOAN NUMBER: ▇▇▇▇▇▇▇▇

## ASSIGNMENT OF DEED OF TRUST AND PROMISSORY NOTE

FOR VALUE RECEIVED, __National City Mortgage, a division of__ National City Bank of Indiana , a National Banking Association, 3232 Newmark Drive, Miamisburg, Ohio 45342, hereby sells, transfers, sets over, and assigns to:

National City Mortgage Co., a subsidiary of National City Bank of Indiana

__National City Mortgage, a division of National City Bank of Indiana__ entire right, title, and interest in and to the following described Deed of Trust (the Deed of Trust) and promissory note (the Promissory Note) which are dated __August 22, 2005__ , and are in the original principal amount of $ __216,000.00__ . The Deed of Trust is described and identified by the following name(s) of the mortgagor(s), the date of recording, instrument number, and/or book number as recorded in __York__ County, __Pennsylvania__ :

| MORTGAGOR(S) | INSTRUMENT NUMBER | BOOK & PAGE |
|---|---|---|
| DANIEL S MELHORN | | |

IN TESTIMONY WHEREOF, said National City Mortgage, a division of National City Bank of Indiana has hereunto set its hands this __19__ day of __October__ , __2005__ .

WITNESS:

National City Mortgage,
a division of
National City Bank of Indiana

By:

Name: JOSEPH A. WILLIAMS
Title: LOAN REVIEW ADMINISTRATOR

STATE OF __OHIO__ )
) SS:
COUNTY OF __MONTGOMERY__ )

On this __19__ day of __October__ , __2005__ , before me, the undersigned, a Notary Public in and for said County and State, personally appeared __JOSEPH A. WILLIAMS__ , the __LOAN REVIEW ADMINISTRATOR__ for and on behalf of __National City Mortgage, a division of National City Bank of Indiana__ , and duly authorized to do so acknowledged the execution of the foregoing Assignment of Deed of Trust and Promissory Note as its voluntary act and deed for the uses and purposes therein contained.

LISE JOHNSON
Notary Public

My Commission Expires: 03/09/2008 My County of Residence: MONTGOMERY

This Instrument Prepared by: NATIONAL CITY BANK OF INDIANA
Return to: National City Bank of Indiana
P.O. Box 8800
Dayton, OH 45401-8800

